## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY RAY HACKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:16-cv-01773-VEH-SGC |
| | ) | |
| WILLIE THOMAS, Warden, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The plaintiff, proceeding *pro se*, has filed an amended complaint pursuant to

42 U.S.C. § 1983, alleging violations of his rights under the Constitution or laws of

the United States. (Doc. 25). The plaintiff names Warden Willie Thomas, Captain

John Hutton, Lt. David Roseman, Warden Christopher Gordy, Katie Bias,

Commissioner Jefferson Dunn and Warden Leon Bolling as defendants. (*Id.* at 3;

*see* Doc. 28). The plaintiff seeks monetary damages and injunctive relief. (Doc.

25 at 13-15). Also pending is the plaintiff's Motion for Emergency Temporary

Restraining Order, which is based on the same facts as his amended complaint.

(Doc. 29). In accordance with the usual practices of this court and 28 U.S.C. §

636(b)(1), this matter was referred to the undersigned for a preliminary report and

recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

# I. STANDARD OF REVIEW

The Prison Litigation Reform Act, as partially codified at 28 U.S.C. § 1915A, requires this court to screen complaints filed by prisoners against government officers or employees. The court must dismiss the complaint or any portion thereof that it finds frivolous, malicious, seeks monetary damages from a defendant immune from monetary relief, or does not state a claim upon which relief can be granted. *Id.* Moreover, the court may *sua sponte* dismiss a prisoner's complaint prior to service. *See* 28 U.S.C. § 1915A(a).

Under § 1915A(b)(1), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit or the claim seeks to enforce a legal right that clearly does not exist. *Id.* at 327.

Moreover, a complaint may be dismissed pursuant to 28 U.S.C. § 1915A (b)(1) for failure to state a claim upon which relief may be granted. A review on this ground is governed by the same standards as dismissals for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Jones v. Bock*, 549 U.S. 199, 215 (2007). In order to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (internal quotation marks omitted). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'show that the pleader is entitled to relief.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 557 (2007) (second brackets in original). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Similarly, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted. *Jones*, 549 U.S. at 215.

*Pro se* pleadings "are held to a less stringent standard than pleadings drafted by attorneys" and are liberally construed. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006). However, they still must allege factual allegations that "raise a right to relief above the speculative level." *Saunders v. Duke,* 766 F.3d 1262, 1266 (11th Cir. 2014) (internal quotation marks omitted).

## II. FACTUAL ALLEGATIONS[1]

The plaintiff's allegations span six years and incarceration at six different state prisons. The plaintiff's saga began in 2011 at Staton Correctional Facility, when he borrowed a cell phone from inmate "Half Dead." (Doc. 25 at 6). A friend

---

[1] At this stage of the litigation, the factual allegations of a complaint are taken as true. *Brown v. Johnson*, 387 F.3d 1344, 1350 (11th Cir. 2004).

of Half Dead's retrieved the phone from the plaintiff but did so without Half Dead's knowledge. (*Id.*). When Half Dead learned the plaintiff gave away his phone, he demanded $500.00 or sexual favors. (*Id.*). The plaintiff reported these threats to the Prison Rape Elimination Act ("PREA") hotline. (*Id.*). The plaintiff was placed in a holding cell, the claim was investigated, and the plaintiff was transferred to Bullock Correctional Facility, where he was held until his release from prison in July 2012. (*Id.*).

In November 2015 the plaintiff returned to prison. (Doc. 25 at 6). The Department of Corrections placed the plaintiff in Limestone Correctional Facility, where he was confronted by inmate "Bam Bam," who claimed to be Half Dead's friend. (*Id.*). Bam Bam demanded $500.00 on Half Dead's behalf and threatened to stab the plaintiff if he did not comply. (*Id.*). The plaintiff paid Bam Bam in tobacco and bags of coffee. (*Id.*). He reported the extortion to "prison officials and mental health counselors," who had the plaintiff moved to a different area of the prison. (*Id.*). However, Bam Bam continued to harangue the plaintiff. (*Id.*). In April 2016, when the plaintiff told Bam Bam he did not have any more money, Bam Bam demanded sexual favors. (*Id.*). The plaintiff again reported Bam Bam, after which the plaintiff was moved to administrative segregation. (*Id.* at 6-7).

While in segregation, the plaintiff wrote to Warden Christopher Gordy, Classification Supervisor Katie Bias, and Commissioner Jefferson Dunn. (Docs. 7,

11). Gordy and Bias told the plaintiff he would be moved to "an enemy free population." (*Id*.). The plaintiff requested protective custody at Limestone, but these defendants denied the request, stating he would be transferred instead. (*Id*.). The plaintiff explained he had known and unknown enemies at every state prison, but these defendants stated he would be transferred anyway. (*Id*.).

The plaintiff was moved to Bibb Correctional Facility on July 12, 2016. (Doc. 25 at 7). His cell was located next to the cell of inmate Derrick Alexander. (*Id*.). Alexander told the plaintiff he had just spoken to Half Dead on the telephone and that there was a "hit" on the plaintiff; Alexander demanded that the plaintiff pay him the $500.00 owed to Half Dead. (*Id*.). Two days later, the plaintiff was admitted to the health care unit for a pre-existing medical condition. (*Id*.). On July 22, 2016, while still housed in the health care unit, the plaintiff had a PREA interview, during which he related that he was in fear for his life because of Alexander's threats. (*Id*.). Lieutenant David Roseman told the plaintiff he would arrange for the plaintiff to be housed in the honor dorm. (*Id*.). Roseman also alerted Captain John Hutton and Warden Willie Thomas to the plaintiff's situation. (*Id.* at 8).

The plaintiff was released from the health care unit into general population on July 25, 2016. (Doc. 25 at 8). The plaintiff told the shift officers that he was supposed to be in the honor dorm, but they merely laughed at him. (*Id*.). While

the plaintiff was in the shower on the night of July 29, 2016, Alexander attacked and sexually assaulted him. (*Id*.). Due to complications with his pre-existing medical condition, the plaintiff returned to the health care unit a day or two later. (*Id.*). Once there, he called the PREA hotline. (*Id*.). Roseman responded, and the plaintiff told him what had transpired. (*Id*. at 8-9). Roseman told the plaintiff he forgot to notify "ICS" the plaintiff should be placed in the honor dorm. (*Id.* at 9).

When he again was released from the health care unit, the plaintiff was sent to the honor dorm. (Doc. 25 at 9). In August 2016 the plaintiff provided the I&I Division with a statement regarding Alexander's assault. (*Id*.). On September 3, 2016, inmate Michael Ellett pulled a knife on the plaintiff. (*Id*.). Ellett said Alexander was paying him to force the plaintiff to write a statement denying that Alexander sexually assaulted him. (*Id.*). A short time later, while Ellett was lying on his bed, the plaintiff hit him in the head with a lock tied to a belt to keep Ellett from stabbing him. (*Id*.). As a result, the plaintiff was placed in segregation. (*Id*.).

On September 22, 2016, the plaintiff was transferred to the Madison County Jail based on newly-brought murder charges. (Doc. 25 at 9). Upon his release, he was returned to Bibb Correctional Facility but immediately transferred to Kilby Correctional Facility, where he was held in administrative segregation. (*Id.*). On December 16, 2016, the plaintiff was transferred from Kilby to Donaldson Correctional Facility and placed in a behavior modification unit cell by himself.

(*Id.*).  The plaintiff sent multiple forms to Warden Leon Bolling explaining why he was in fear for his life.  (*Id.*).  Bolling did not respond, and the plaintiff was released to general population on January 4, 2017.  (*Id*. at 9-10).  Within several days, inmates claiming an affiliation with Half Dead and Alexander confronted the plaintiff.  (*Id*. at 10).  The plaintiff's cellmate, "Lay Low," threatened to "pimp out" the plaintiff to generate money for his protection of the plaintiff.  (*Id.*).  Lay Low also demanded sexual favors in exchange for protection.  (*Id.*).

On January 9, 2017, the plaintiff called and left a message on the PREA hotline.  (Doc. 25 at 10).  On January 10, 2017, Lieutenant Johnson took the plaintiff to her office, where the plaintiff explained the foregoing series of events.  (*Id.*).  The plaintiff begged to be placed in segregation, and Johnson—a non-party to this lawsuit—stated she could place him in disciplinary segregation based on the 75 days of segregation he had accumulated from disciplinary infractions at Bibb Correctional Facility.  (*Id.*).  The plaintiff expected to be released back into general population on or about March 25, 2017.  (*Id*.; *see also* Doc. 29 at 2).

Based on the foregoing, the plaintiff seeks a preliminary and permanent injunction requiring that he be housed in administrative segregation.  (Doc. 25 at 13; Doc. 29).  He also seeks money damages against the defendants.  (*Id*. at 15).

# III. ANALYSIS

To state a claim for relief under § 1983, a plaintiff must allege an act which deprived him of a right, privilege, or immunity protected by the Constitution or laws of the United States, committed by a person acting under color of state law. *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claims, the complaint is subject to dismissal. *See* 28 U.S.C. § 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

The undersigned construes the plaintiff's amended complaint as attempting to state claims under the Eighth Amendment for failure to protect, as well as a request for injunctive relief against defendant Bolling only.[2] The Eighth Amendment prohibits deliberate indifference to an inmate's health or safety, *Lane v. Philbin,* 835 F.3d 1302, 1307 (11th Cir. 2016), and "imposes a duty on prison officials" to "take reasonable measures to guarantee the safety of the inmates," *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (alterations omitted)). "Prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (per

---

[2]  As explained to the plaintiff in the District Judge's Order of January 19, 2017, his requests for injunctive relief against the other named defendants are moot. (*See* Doc. 22). The undersigned does not repeat those legal findings here.

curiam) (quotations and alterations omitted). "The known risk of injury must be a strong likelihood, rather than a mere possibility, before a guard's failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotations omitted).

To state a deliberate indifference claim under the Eighth Amendment, a plaintiff must show a "substantial risk of serious harm" and that the defendants acted with "deliberate indifference" to that risk. *See Farmer*, 511 U.S. at 834. The court applies an objective standard in examining the first element, a substantial risk of serious harm. *Caldwell*, 748 F.3d at 1099 (citing *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001) (en banc), *abrogated on other grounds by Twombly*, 550 U.S. 544). This element requires a plaintiff to allege conditions that are sufficiently serious to violate the Eighth Amendment, meaning conditions which are extreme and pose an unreasonable risk of serious injury. *See Lane*, 835 F.3d at 1307.

Taking the plaintiff's allegations as true, he was subject to extortion, was made to fear for his safety, and was sexually assaulted by Alexander based on instructions from Half Dead. The plaintiff claims that because cell phones are common among inmates, Half Dead can contact inmates at every prison with

instructions to come after him and continue the harassment.[3]  The plaintiff further

asserts that he has reported each incident and the factual background underlying

the incidents to prison staff, wardens, and Commissioner Jefferson Dunn and on

the PREA hotline.  These facts sufficiently set forth conditions which constitute an

objective substantial risk of serious harm in the context of a failure to protect

claim.

The second element—the defendants' deliberate indifference to that risk—

has two components, one subjective and one objective.  To meet the subjective

prong, a plaintiff must produce evidence that the defendants "actually

(subjectively) knew that an inmate faced a substantial risk of serious harm."

*Caldwell,* 748 F.3d at 1099 (citing *Rodriguez v. Sec'y for Dep't of Corr.,* 508 F.3d

611, 617 (11th Cir. 2007) (alterations omitted)).  To satisfy the objective

component of the second element, a plaintiff must produce evidence that the

defendants "disregarded that known risk by failing to respond to it in an

(objectively) reasonable manner." *Id.*  In other words, the plaintiff must allege that

a prison official "knows of and disregards an excessive risk to inmate health or

safety; the official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the

_____

[3]  The plaintiff provides no explanation as to how Half Dead knows not only to which prison the
plaintiff will be transferred each time, but which specific cell block or dorm, as well.  However,
for purposes of this opinion, the undersigned accepts the plaintiff's assertion that Half Dead is
able to do so.

inference." *Farmer*, 511 U.S. at 837. The court may "infer the existence of this subjective state of mind from the fact that the risk of harm is obvious." *Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (citing *Farmer*, 511 U.S. at 842). With these standards in mind, the court considers the plaintiff's claims against each of the named defendants.

### A.    <u>Official Capacity Claims</u>

The plaintiff brings his claims against each defendant in his or her official and individual capacities. However, all of the named defendants are immune from suit in their official capacities. Official capacity lawsuits are "in all respects other than name . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166, (1985). A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hosp.*, 465 U.S. at 100-101, or Congress has abrogated the state's immunity, *see  Seminole Tribe v. Fla.*, 517 U.S. 44, 59 (1996). Alabama has not waived its Eleventh Amendment immunity, and Congress has not abrogated it. *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted).

In light of the foregoing, all of the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims against them in their official capacities. *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th

Cir. 1997); *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994). The claims against these defendants in their official capacities are therefore due to be dismissed.

## B. Individual Capacity Claims

### 1. Commissioner Jefferson Dunn

To the extent the plaintiff sues Commissioner Dunn in his individual capacity as a supervisor, "supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). A causal connection can be established by a history of widespread abuse, such that the responsible supervisor is on notice of the need to correct the alleged deprivation, and he fails to do so. *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003). Claims against supervisory personnel who did not personally participate in the acts complained of are not actionable under § 1983. *Case v. Riley*, 270 F. App'x 908, 911 (11th Cir. 2008); *see Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) ("[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference . . . . Each individual [d]efendant must be judged separately and on the basis of what that person knows.").

Here, neither the complaint nor the amended complaint states any allegations against Dunn other than the plaintiff sent him letters. Therefore, even assuming Dunn knew of the plaintiff's predicament, this does not demonstrate that Dunn either directed his subordinates to act unlawfully or knew that the subordinates would do so and failed to stop them. *See Gonzalez*, 325 F.3d at 1235. Absent some allegation that Dunn sanctioned, participated in, or was otherwise affirmatively linked to the actions giving rise to the plaintiff's claims, any claims against Dunn are due to be dismissed because they are insufficient to state a cause of action under 42 U.S.C. § 1983. *See e.g., Iqbal,* 556 U.S. at 677 ("purpose rather than knowledge is required to impose liability" for deliberate indifference).

### 2. Limestone Defendants Gordy and Bias

When the plaintiff notified "prison officials" and "mental health counselors" of Bam Bam's threats and extortion, they moved the plaintiff to another area of the prison. (Doc. 25 at 6). Because Bam Bam's threats continued, the plaintiff again reported him to "mental health and prison officials," who placed the plaintiff in administrative segregation. (*Id*. at 6-7). While in administrative segregation, the plaintiff asked defendants Gordy and Bias to place him in protective custody. (*Id*. at 7). Instead, these defendants transferred the plaintiff to a different prison. (*Id*.). The plaintiff informed Gordy and Bias that transferring him would not protect him from harm, which ultimately proved correct. However, courts may not use "the

advantage of hindsight to determine whether conditions of confinement amounted to cruel and unusual punishment." *Purcell v. Toombs County*, 400 F.3d 1313, 1320 (11th Cir. 2005). Moreover, the fact that these defendants did not provide the plaintiff with his preferred form of relief, protective custody, does not rise to the level of deliberate indifference. The Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekora*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976).

Prison officials must "take reasonable measures to guarantee the safety of inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). In other words, the court must examine the reasonableness of the prison officials' response, rather than its effectiveness. Here, although the defendants' actions ultimately proved insufficient to protect the plaintiff, this does not create a basis upon which to find constitutional liability. *See Chandler v. Crosby*, 379 F.3d 1278, 1290 (11th Cir. 2004) (quoting *Farmer*, 511 U.S. at 844) ("the official may escape liability for known risks if '[he] responded reasonably to the risk, even if the harm ultimately was not averted'"); *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014) (citing *Caldwell*, 748 F.3d at 1100) (specifying that, as to the objective component, the plaintiff must demonstrate that, having subjective knowledge of the risk, a

defendant failed to reasonably respond to it). Even though the plaintiff requested protective custody, the decision to transfer him does not demonstrate deliberate indifference as it was not an unreasonable decision. *See, e.g., Caldwell*, 748 F.3d at 1099 (requiring prison officials to respond to substantial risks to inmates' health and safety in an objectively reasonable manner). Therefore, 28 U.S.C. § 1915A bars this action from proceeding any further against these defendants. *See Terry v. Bailey*, 376 F. App'x 894, 895 n.2 (11th Cir. 2010) (a finding of no constitutional violation requires dismissal under 28 U.S.C. § 1915A(b)(1) for failure to state a claim). The plaintiff's claims against defendants Gordy and Bias are due to be dismissed.

### 3. Bibb Defendants Thomas, Roseman, and Hutton

After his placement at Bibb Correctional Facility, the plaintiff reported the threats by Derrick Alexander to Roseman. (Doc. 25 at 7). Roseman told the plaintiff he could not put him in segregation because there were no empty cells but that he would place him in the honor dorm. (*Id.*). Roseman also called defendants Hutton and Thomas and relayed the plaintiff's concerns. (*Id.* at 8). According to the plaintiff, both Hutton and Thomas told Roseman not to place the plaintiff in segregation. (*Id.*). Although Roseman stated he would arrange for the plaintiff to be housed in the honor dorm, he forgot to notify "ICS." (*Id.* at 8-9). Alexander then attacked and sexually assaulted the plaintiff. (*Id.* at 8). After this attack, the

plaintiff was reassigned to the honor dorm. (*Id*. at 9). Taking the plaintiff's allegations as true, the plaintiff notified Roseman that he needed protection, Roseman developed a plan to protect the plaintiff, and Roseman relayed his plan to Hutton and Thomas. The fact that Rosemen then failed to actually reassign the plaintiff to the honor dorm cannot be attributed to Hutton and Thomas for purposes of deliberate indifference. The plaintiff's allegations are not sufficient to state a claim that Hutton and Thomas failed to act "in an (objectively) reasonable manner." *Caldwell,* 784 F.3d at 1099; *see Rodriguez v. Sec'y for Dep't of Corrs*., 508 F.3d 611, 619-20 (11th Cir. 2007) (noting that prison officials who act reasonably cannot be held liable for purposes of a failure to protect claim).

Although the plaintiff suffered a cognizable injury while housed at Bibb Correctional Facility, his allegations fail to provide any basis on which Hutton and Thomas could be held responsible for the attack by Alexander. Specifically, Roseman's failure to carry through on his plan to protect the plaintiff cannot be attributed to Hutton or Thomas. A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference . . . . Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette*, 533 F.3d at 1331. According to the plaintiff, Roseman called Hutton and Thomas and told them he would have

the plaintiff moved to the honor dorm.  On that basis, Hutton and Thomas's failure to take any further action was objectively reasonable.  Because the plaintiff's amended complaint states no claim of constitutional proportion against these two defendants, they are due to be dismissed from this action pursuant to 28 U.S.C. § 1915A.

As previously stated, the plaintiff faults Roseman for forgetting to notify ICS that the plaintiff needed to be moved to the honor dorm.  (Doc. 25 at 9).  The plaintiff does not suggest Roseman acted in bad faith, maliciously, or out of sheer indifference to the plaintiff's plight.  While the plaintiff asserts that Roseman "forgot" to have the plaintiff reassigned, forgetting is akin to negligence, not deliberate indifference.  The "negligent failure to protect an inmate from attack does not justify liability under § 1983." *Brown*, 894 F.2d at  1537.

Instead, an Eighth Amendment claimant must show that a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm," and not that the action or inaction was undertaken "believing that harm actually would befall an inmate." *Caldwell*, 748 F.3d at 1102 (citing *Farmer*, 511 U.S. at 842).  Here, the plaintiff does not allege Roseman acted without regard to whether the plaintiff would be harmed.  In fact, upon hearing the plaintiff's concerns, Roseman proposed a solution.  The plaintiff does not state that a transfer to the honor dorm would not have kept him safe, but rather that he was attacked by

Alexander because Roseman failed to ensure the plaintiff was actually transferred. At most, the plaintiff states a claim for negligence against Roseman.

For the reasons stated above, the claim against Roseman is due to be dismissed.

### 4. Donaldson Defendant Leon Bolling

The only Donaldson Correctional Facility officer named by the plaintiff as a defendant in this action is Warden Leon Bolling. Upon his arrival at Donaldson, the plaintiff was placed in a single cell for behavior modification. (Doc. 25 at 10). While there, the plaintiff sent "many request forms" to Warden Bolling explaining he was in fear for his life because of known and unknown enemies within the Alabama prison system. (*Id*.). The plaintiff received no response, and no action was taken, resulting in his release into general population on January 4, 2017. (*Id.* at 9-10). Shortly thereafter, the plaintiff was confronted by inmates who claimed to be affiliated with Half Dead and Derrick Alexander. (*Id*. at 10). The plaintiff's cellmate, Lay Low, threatened to "pimp out" the plaintiff to generate money for the plaintiff's own protection. (*Id*.). On January 9, 2017, the plaintiff called the PREA and the following day, Lieutenant Johnson placed the plaintiff in segregation due to disciplinary infractions amassed at Bibb Correctional Facility. (*Id*.). The plaintiff expected to be released from segregation on March 25, 2017. (*Id*).

Assuming the foregoing facts could establish a substantial risk of serious harm, the sole basis for the plaintiff's conclusion that Bolling has been deliberately indifferent to that risk is Bolling's failure to respond to the letters the plaintiff wrote while in behavior modification. Since notifying PREA of his fears, the plaintiff has been placed in segregation. While Bolling is charged with protecting the plaintiff from other prisoners, *Carter*, 352 F.3d at 1349, a federal court may not dictate the appropriate method for doing so, *see, e.g., Cruz v. Beto*, 405 U.S. 319, 321 (1972) (federal courts sit not to supervise prisons but to enforce the constitutional rights of all persons, including prisoners.).

Moreover, the plaintiff does not assert he notified Bolling of Lay Low's actual threats against him. Rather, the plaintiff claims that ***prior*** to being housed with Lay Low, he told Bolling about his known and unknown enemies throughout the prison system. At best, the plaintiff asserts that he wrote Bolling, he was placed in general population, he was threatened, and he was removed from general population. As previously stated, the Eighth Amendment does not entitle the plaintiff to choose his prison housing accommodations. *See e.g., Meachum,* 427 U.S. at 228-229 (holding that the day to day functioning of state prisons is not the business of federal judges). Bolling's failure to discuss future plans for housing the plaintiff does not state a constitutional violation. Therefore, the plaintiff's claims against Bolling are due to be dismissed.

## C.    <u>Injunctive Relief</u>

As to the plaintiff's request for injunctive relief,[4] he must show he has "sustained or is immediately in danger of sustaining some direct injury as the result of the challenged conduct and the injury or threat of future injury must be both real and immediate, not conjectural and hypothetical." *Church v. City of Hunstville*, 30 F.3d 1332, 1337 (11th Cir. 1994).   The remote possibility of a future injury is insufficient to satisfy this burden. *Malowney v. Fed. Collection Deposit Grp*., 193 F.3d 1342, 1347 (11th Cir. 1999).   "When a threatened future injury is dependent upon conjecture about how individuals will intentionally act in the future," that injury will be "cast into the realm of conjecture and speculation." *Fla. State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1161-63 (11th Cir. 2008).

The plaintiff alleges he was to be released from disciplinary segregation sometime in the future.   Although not explicitly stated by the plaintiff, his request for relief implies no one at Donaldson Correctional Facility told him of a plan to protect him from enemies after his release from segregation and that therefore he will be returned to general population.   However, as previously stated, a federal

---

[4]  To be entitled to injunctive relief, a plaintiff must establish four factors: (1) a substantial likelihood of success on the merits; (2) that the preliminary injunction is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm the preliminary injunction would cause the other litigant; and (4) that the preliminary injunction would not be averse to the public interest. *Chavez v. Fla. SP Warden*, 742 F.3d 1267, 1271 (11th Cir. 2014) (citing *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034–35 (11th Cir. 2001)).   Because the plaintiff cannot satisfy the first element, discussion of the remaining three elements is unnecessary.

court may not meddle in state prison affairs such as the assignment of a prisoner to a specific facility or level of custody. *See e.g., Meachum*, 427 U.S. at 228-229.

While the plaintiff can undoubtedly establish that he has enemies within Donaldson Correctional Facility, he has provided no factual basis for a finding that Bolling will not protect him from those enemies in the future. Any injunctive relief at this time will necessarily amount to no more than an order for Bolling to continue to obey the law in the future. An injunction requiring only that a party "obey the law" is impermissible. *Elend v. Basham*, 471 F.3d 1199, 1209 (11th Cir. 2006) (citing *Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir. 1994)). Because an injunction at this time could be no more than an order for Bolling to protect the plaintiff from his known and unknown enemies, which Bolling is already required by law to do, the relief the plaintiff seeks is an impermissible "obey the law" injunction. *See e.g., SEC v. Smyth*, 420 F.3d 1225, 1233 (11th Cir. 2005); *McKinnie v. Boseman*, No. 109-70, 2009 WL 3753989, at *3 (S.D. Ga. Nov. 9, 2009) (noting that obey the law injunctions are unenforceable).

While the plaintiff has established that he has known and unknown enemies throughout the prison system, he has not alleged that Bolling will fail to protect him from those enemies in the future. Therefore, the plaintiff's claim for injunctive relief is due to be dismissed for failure to state a claim upon which relief may be granted. Similarly, the plaintiff's Motion for Emergency Temporary Restraining

Order alleges he was in segregation, was due to be released from segregation, and has known and unknown enemies in the "Blood Gang" who have sworn to kill him and that no one in prison administration has responded to his requests to be placed in administrative segregation. (Doc. 29). As with the relief requested in his amended complaint, the plaintiff seeks no more than an order requiring the defendants to keep the plaintiff safe from his enemies, which the defendants are required to do by law. Thus, as previously stated, any injunctive relief at this time will necessarily amount to no more than an order for Bolling to continue to obey the law in the future. As noted above, injunctions of this nature are impermissible.

## IV. RECOMMENDATION

For all of the reasons stated above, the undersigned **RECOMMENDS** all claims in this matter be **DISMISSED WITHOUT PREJUDICE**, pursuant to 28 U.S.C. § 1915A(b)(1), for failing to state a claim upon which relief can be granted. The undersigned **FURTHER RECOMMENDS** the plaintiff's motion seeking an "Emergency Temporary Restraining Order"[5] be **DENIED**. (Doc. 29).

---

[5] The plaintiff also has filed an "Emergency Request for Relief," which is a letter to the U.S. Attorney. (Doc. 30). The letter asserts the plaintiff is the target of threats and harassment due to his involvement in the arrest and conviction of a correctional officer in 2002. (Doc. 30 at 1). The letter does not mention the threats related to Half Dead's cellphone. (*Id.*). However, as with his requests for injunctive relief related to Half Dead, the plaintiff seeks to be placed in protective custody or permanent administrative segregation. (*Id.* at 2).

# V. NOTICE OF RIGHT TO OBJECT

The plaintiff may file specific written objections to this report and recommendation. Any objections must be filed with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objection. Failure to object to factual findings will bar later review of those findings, except for plain error. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013). Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

Upon receipt of objections, a United States District Judge will make a *de novo* determination of those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the findings of fact and recommendations made by the magistrate judge. The district judge also may refer this action back to the magistrate judge with instructions for further proceedings.

The plaintiff may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. The plaintiff may only appeal from a final judgment entered by a district judge.

**DONE** this 26th day of May, 2017.

STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE